IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES, *et al.*,

    *Plaintiffs*,

*ex rel.* LAURI LITTLEWOOD,

    *Relator*,

v.

KING PHARMACEUTICALS, INC., *et al.*,

    *Defendants*.

Civil Action No. ELH-10-973

## MEMORANDUM OPINION[1]

Lauri Littlewood, the relator, filed this *qui tam* action on April 16, 2010, on behalf of the

United States and various states,[2] against King Pharmaceuticals, Inc. ("King"), Alpharma, Inc.

("Alpharma"), and IBSA Biochemique SA ("IBSA"), pursuant to the False Claims Act, 31

---

[1] This Memorandum Opinion was originally filed under seal on June 13, 2011 (ECF 22), accompanied by an Order (ECF 23) staying the unsealing of this case for thirty days, to permit any party to file a motion for reconsideration or notice of appeal. On July 8, 2011, pursuant to a joint motion to extend the stay filed by the relator and the United States, the Court entered an Order (ECF 25) extending the stay until August 15, 2011. No motion or notice of appeal was filed during the stay period. Therefore, on August 17, 2011, I entered an Order to Unseal and to Dismiss (ECF 26). The text of this version of the Memorandum Opinion is identical to the version that was filed under seal on June 13, 2011, with the exception of the addition of this footnote and minor stylistic and citation corrections, made for purposes of publication. Notably, during the stay period, in another False Claims Act case pending in this Court, Judge Catherine C. Blake issued an opinion reaching conclusions similar to those in the case *sub judice*. *See United States ex rel. Rostholder v. Omnicare, Inc.*, ___ F. Supp. 2d ___, 2011 WL 3236016 (D. Md. July 28, 2011).

[2] The *qui tam* states are California, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Louisiana, Massachusetts, Michigan, Montana, New Hampshire, New Jersey, New Mexico, New York, Nevada, South Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, and Wisconsin, as well as the District of Columbia. On June 7, 2010, the state of Montana separately declined intervention. *See* ECF 7.

U.S.C. §§ 3729 *et seq*. Since 2007, Littlewood has been employed as a sales representative for Alpharma and then King, selling various pain management products. She has alleged that the defendants engaged in an illegal scheme to promote off-label uses of a non-steroidal, topical, anti-inflammatory drug, FLECTOR Patch.[3] According to Littlewood, the defendants "knew (and intended) that their off-label promotion of FLECTOR Patch would (and did) cause false andfraudulent claims for reimbursement to be submitted to, and paid by, government health care programs." (ECF 17-1 at 2).

On April 19, 2011, the United States and the *qui tam* states filed a Notice of Intent to Decline Intervention (ECF 16), which was amended on April 21, 2011. *See* ECF 18. Thereafter, on April 28, 2011, the relator filed a voluntary dismissal of the underlying suit, without prejudice, pursuant to Federal Rule of Civil Procedure 41(a) (ECF 19). On May 6, 2011, the United States and the *qui tam* states consented to the dismissal, without prejudice (ECF 21).

In the Government's Amended Notice of Election to Decline Intervention ("Amended Notice") (ECF 18), the Government requested, *inter alia*, the unsealing of the relator's Amended Complaint, the Amended Notice, and its proposed Order. However, it asked the Court to maintain the seal for all other papers filed in the action, which include two motions filed by the Government for extension of the time to decide whether to intervene (ECF 9 & 13). It argued that "such papers [were] provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended." Amended Notice at 2.

---

[3] In 2007, Alpharma purchased the exclusive rights from IBSA to market FLECTOR Patch in the United States. King acquired Alpharma's assets and liabilities in December 2008.

The Government's request to unseal generated an opposition from the relator. *See* Opposition of Plaintiff/Relator To the Request of the United States And *Qui Tam* States To Unseal This Case ("Opposition" or "Opp.") (ECF 17). In her Opposition, the relator vigorously urges the Court to deny the Government's request to unseal, asserting: "(i) the presumption of public access to judicial documents does not apply in these circumstances; (ii) public interest and public policy support maintaining the seal; (iii) unsealing the case would cause significant harm to Relator Littlewood; and (iv) unsealing the case would cause significant harm to Defendants and other accused wrongdoers named in the First Amended Complaint." Opp. at 1-2.

The United States filed a "Response to Relator's Request to Maintain This Matter Under Seal" ("Response") (ECF 20), opposing the relator's opposition to lift the seal with respect to the Amended Complaint. According to the Government, maintaining the seal "would violate the strong presumption in favor of the public's right to examine and copy judicial records." Response at 2. Moreover, it maintains that the relator "has failed to meet her burden to maintain her identity under seal." *Id.* at 3. However, the Government renews its request to maintain the seal for its motions for extensions of time to elect to intervene. *Id.* at 2.

For the reasons that follow, the Court will deny the requests of both parties to maintain the seal as to any portion of the record, and will order that the case be unsealed in its entirety.

## Statutory Background

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, "prohibits submitting false or fraudulent claims for payment to the United States, § 3729(a), and authorizes *qui tam* suits, in which private parties bring civil actions in the Government's name, § 3730(b)(1)." *Schindler Elevator Corporation v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1889 (2011). Under 31

U.S.C. § 3730(b)(2), the *qui tam* relator must file the complaint under seal, and it must remain sealed for at least 60 days. "This initial seal provision and 60-day period are mandatory." *ACLU v. Holder*, ___ F.3d ___, No. 09-2086, slip op. at 8 (4th Cir. Mar. 28, 2011). As the Fourth Circuit recently explained in *Holder*, "Congress adopted the 60-day period for numerous reasons," including to permit the government "to investigate the allegations to decide whether to intervene." *Id.* "The seal provisions provide time for . . . investigation so that the United States may make an informed decision about whether to intervene in the qui tam action." *Id.*, slip op. at 9. For good cause shown, the government may seek extensions of the time to investigate, during which the complaint remains under seal. 31 U.S.C. § 3730(b)(3).

If the United States decides to intervene in a *qui tam* action, it "takes over the litigation." *Holder*, slip op. at 9. Upon intervention, "the complaint is unsealed, the docket is unsealed, and the United States serves the complaint on the defendant . . . ." *Id.* However, the *qui tam* relator remains a party to the action. *Id.*, slip op. at 10. *See* 31 U.S.C. § 3730(c)(1).

The *Holder* Court also explained the process when, as here, the United States declines to intervene. Notably, the Court said: "The Complaint is then unsealed, the docket is unsealed, and the *qui tam* relator serves the complaint on the defendant . . . [and] litigates the case against the defendant." *Holder*, slip op. at 10.

Unlike several of the cases that I have reviewed with respect to the FCA's seal provisions, the case at bar does not involve a plaintiff or a defendant urging full disclosure. To the contrary, the relator here opposes all unsealing, the defendant is presumably unaware of the suit, and the Government urges an indefinite seal solely as to its extension requests. In analyzing the issue, the Court is mindful that, in general, the public enjoys the right of access to judicial

documents, and there is a strong public interest in favor of disclosure. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) ("[C]ourts of this country recognize a general right to inspect . . . judicial records and documents."). Such access safeguards "the citizen's desire to keep a watchful eye on the workings of public agencies." *Id.* at 598.

I am satisfied that the proceedings with respect to this case, involving allegations of fraudulent claims for reimbursement submitted to federal health care programs, "fall well within the bounds of that which citizens may wish to observe." *United States ex rel. Costa v. Baker & Taylor, Inc.*, 955 F. Supp. 1188, 1190 (N.D. Cal. 1997) (rejecting Government's motion to retain seal in *qui tam* case). I have also considered the harm that unsealing may impose upon the relator and upon the Government in light of the strong public interest in favor of disclosure. As I shall explain, neither with respect to Littlewood nor the Government does the balance tip in favor of maintaining the seal in any respect.

### Littlewood's Request to Maintain the Seal

Littlewood argues that, because she has filed a Notice of Dismissal of her suit before serving it on defendants, this case should remain sealed indefinitely. According to Littlewood, unsealing the case would not serve the public interest, and would "undercut well-settled public policy and do serious harm to Relator Littlewood" and others. Opp. at 3. In this regard, Littlewood notes that she remains employed as a sales representative for King, and maintains that if "she were to lose her anonymity, the harm that would befall her would be swift and severe." Opp. at 9. In her view, she "should not be penalized for having come forward, yet that is precisely what would occur if this case is unsealed." Opp. at 11.

Further, Littlewood contends that "the presumption of public access [to judicial documents] does not apply because this lawsuit will be dismissed" before the suit is ever served. Opp. at 5. Moreover, she contends that "public policy" supports maintaining the seal to encourage other potential whistle-blowers to come forward. Opp. at 8.

In support of her Opposition to the request of the United States and the *qui tam* states to unseal the Amended Complaint, Littlewood submitted a Declaration ("Littlewood Decl.") (ECF 17-4). There, Littlewood explains that she is the mother of two young children, and that her "family depends upon [her] employment income to meet [their] monthly expenses . . ." Littlewood Decl. at 2. For this reason, she asks "for the Court's compassion" in retaining the seal. *Id.* at 3.

Although both the relator and the Government cite various cases regarding the presumption of public access to judicial documents, the parties have cited little appellate authority that directly applies to whether the seal in an FCA case may be maintained after the Government has decided whether to intervene. Noting the "relative absence of published cases in this Circuit on these issues," the relator relies heavily upon an unreported decision, *In re Policy Management Systems Corp.*, 67 F.3d 296, 1995 U.S. App. LEXIS 25900, 1995 WL 541623 (4th Cir. Sept. 13, 1995), discussed, *infra*.

The parties cite one reported appellate opinion that concerns maintenance of the seal in a *qui tam* case: *Under Seal v. Under Seal*, 326 F.3d 479 (4th Cir. 2003). In *Under Seal,* the defendants in a *qui tam* case sought to maintain the seal after the Government decided to intervene. Here, it is the relator who is the party seeking an extension of the seal.

In *Under Seal*, the defendants were corporations who participated in the National Flood Insurance Program ("NFIP"). *Id.* at 480. An unidentified relator filed a sealed complaint, in the name of the United States, claiming the defendants made wrongful insurance payments in connection with the NFIP. *Id.* After the Government elected to intervene, the district court entered an order unsealing the action. *Id.* However, the defendants moved successfully to compel private arbitration of the complaint, which was mandatory under the NFIP, and to stay the proceedings in federal court pending the outcome of the arbitration. *Id.* The defendants also sought to maintain the seal on the case while the arbitration was pending, but the district court denied the request. *Id.* The Fourth Circuit found no error in the district court's exercise of discretion in ordering the record to be unsealed. *Id.*

The Court recognized that "the presumption in favor of public disclosure of court records can only be overcome by a significant countervailing interest." *Id.* at 486. It identified three exceptions to the "presumption of public access," *id.* at 485, as follows: "(1) where disclosure may be used to gratify private spite or promote public scandal, (2) where disclosed records may serve as reservoirs of libelous statements for press consumption, or (3) where disclosure might reveal trade secrets." *Id.* at 485-86.

The Court determined that the defendants/appellants had no privacy rights in the contents of the court record. *Id.* at 486. It reasoned: "Since the purpose of the FCA does not support *continued* sealing, and only justifies sealing in order that the government may investigate, appellants' reliance on that Act is misplaced." *Id.* (emphasis in original). In the Court's view, the appellants failed "to demonstrate any relevant privacy right," so as to "overcome the public's right to access court documents." *Id.*

As noted, Littlewood places great reliance on an unreported decision, *In re Policy Management Systems*, *supra*. *Policy Management* was not an FCA case, however. Rather, it concerned a shareholder derivative action, in which shareholders of Policy Management Systems ("PMSC") alleged violations of federal and state securities laws. *See In re Policy Mgmt. Sys.*, *supra*, 1995 U.S. App. LEXIS 25900, at *2. In addition to their suit against PMSC, the shareholders filed a related suit against Ernst & Young and Arthur Andersen & Co., PMSC's former auditors. *Id.* In their response to a motion to dismiss filed by the auditors, the shareholders included as sealed exhibits certain documents that had been produced with a "confidential" designation in the litigation against PMSC. *Id.* at *3-4. The district court granted the motion to dismiss, noting that in doing so it did not rely on the sealed documents because they were matters outside the pleadings. *Id.* at *4; *see also id.* at *13. The district court then ordered the documents unsealed, albeit in redacted form. *Id.* at *4.

The Fourth Circuit reversed in an unreported, *per curiam* decision, over the dissent of Judge Michael. The panel majority recognized that the "right of public access derives from two independent sources: the common law and the First Amendment." *Id.* at *7 (citing *Nixon*, *supra*, 435 U.S. at 597). The common law presumption of public access applies to "all judicial records and documents," but can be overcome if, in the trial court's discretion, the public's interest is outweighed by "competing interests." *Id.* at *7. In contrast, the First Amendment guarantee of access is "more limited [in] scope," and attaches "'only to particular judicial records and documents.'" *Id.* at *8 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988)). However, where the First Amendment right attaches, it can only be overcome upon a showing that denial of public access is "'necessitated by a compelling governmental interest,

and is narrowly tailored to serve that interest.'" *Id.* at *9 (quoting *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606-07 (1982)).

The *Policy Management* Court concluded that "the First Amendment guarantee of access should not be extended to documents filed in connection with a motion to dismiss," where "such documents are not considered by the court." *Policy Mgmt.*, 1995 U.S. App. LEXIS 25900, at *10. The Court reasoned that "documents filed with a motion to dismiss that are excluded by the court do not play any role in the adjudicative process." *Id.* at *11. In the Court's view, such documents do not "constitute 'judicial documents' subject to the common law presumption of access." *Id.* at *12. According to the Court, the "mere filing of a document with a court does not render the document judicial"; rather, "a document becomes a judicial document when a court uses it in determining litigants' substantive rights." *Id.* at *13. "Because the documents played no role in the [district] court's adjudication of the motion to dismiss," the Court held that "the documents did not achieve the status of judicial documents to which the common law presumption of public access attaches." *Id.* at *13-14.

As in *Policy Management*, Littlewood contends that, in this case, "the presumption of public access does not apply because this lawsuit will be dismissed before the . . . Amended Complaint is served, and without any judicial rulings on any contested claims or motions (other than the present issue). Thus, there will be no adjudication process and no judicial decision-making." Opp. at 5-6. She suggests that *Under Seal*, and another unreported Fourth Circuit decision rejecting an FCA defendant's objection to unsealing, *see Under Seal v. Under Seal*, 27 F.3d 564, 1994 U.S. App. LEXIS 16117, 1994 WL 283977 (4th Cir. June 27, 1994), are

distinguishable, because in those cases the Government decided to intervene, and thus the cases were not dismissed. Opp. at 6.

Neither Littlewood nor the Government has cited *ACLU v. Holder*, *supra*, which is the Fourth Circuit's most recent pronouncement on the seal provisions of the FCA. In *Holder*, the appellants challenged the 60-day mandatory seal provision under 31 U.S.C. § 3730(b)(2), claiming it "facially violate[d] the First Amendment and the Constitution's separation of powers." *Holder*, slip op. at 11. In particular, they claimed that the seal provision violated the public's First Amendment right of access to judicial proceedings. *Id.*[4]

In Holder, the Fourth Circuit assumed, without deciding, that the First Amendment right of access extends to a *qui tam* complaint sealed in accordance with 31 U.S.C. § 3730. *Id., slip op. at 13. Moreover, it recognized that the United States "has a compelling interest in protecting the integrity of ongoing fraud investigations." *Id.*, slip op. at 13. And, it determined that the seal provisions are "narrowly tailored" to serve that compelling Government interest. *Id.*, slip op. at 14.

Judge Gregory dissented in *Holder*, arguing that the Government failed to "justify its First Amendment infringement with compelling interest and narrow tailoring." *Id.*, slip op. at 23 (Gregory, J., dissenting). In his view, the 60-day seal "violates the fundamentally 'public character of the trial' as well as our tenet 'that historically both civil and criminal trials have been presumptively open.'" *Id.*, slip op. at 27 (citation omitted). Judge Gregory suggested that "[t]ransparency allows the public to monitor the progress of FCA enforcement since the

---

[4] The *Holder* Court determined that the appellants had abandoned an argument that the common law provides a right of access to judicial records, and therefore the *Holder* Court did not consider that contention. *Holder*, slip op. at 12, n.5.

'[p]ublicity of [court] records . . . is necessary in the long run so that the public can judge the product of the courts in a given case.'" *Id.*, slip op. at 28 (citation omitted). Notably, in response to Judge Gregory's concerns, the panel majority observed that no *qui tam* case is sealed indefinitely, stating: "[*I*]*n every FCA case, the qui tam complaint will be unsealed.* Thus, in every FCA case, the people will be able to see how the Executive and Judiciary have fulfilled their constitutional and statutory roles." *Id.*, slip op. at 22 (majority) (emphasis added).

The decision in *Holder* reflects a fundamental distinction between FCA suits and ordinary civil disputes between private parties, such as *In re Policy Management Systems*. *Qui tam* suits under the FCA are brought in the name of the United States. By definition, an FCA complaint alleges a fraud upon the public fisc. Thus, FCA cases inherently implicate the public interest.

Littlewood has not cited any case in which a court has adopted arguments similar to hers for maintaining the seal on a voluntarily dismissed *qui tam* action, and the Court has found none. However, the Court's research has uncovered several strikingly similar cases in which district courts have rejected arguments similar to those advanced by the relator.

The case of *United States ex rel. Herrera v. Bon Secours Cottage House Services*, 665 F. Supp. 2d 782 (E.D. Mich. 2008), is particularly instructive. There, the relator initiated a *qui tam* action under the FCA and Michigan's Medicaid False Claims Act against her former employer, Bon Secours Cottage House Services, alleging that the defendant fraudulently submitted inflated and inaccurate bills to Medicare and Medicaid. *Id.* at 782-83. As in this case, both the Government and the State of Michigan declined to intervene. *Id.* at 783. Thereafter, the relator filed a motion to voluntarily dismiss the case, without prejudice, and to maintain the seal. *Id.*

Although the Government agreed to the voluntary dismissal, it objected to the relator's request for a permanent seal. *Id.*

In urging the court to maintain the seal, the relator explained that she remained actively employed in the health care community, and was in fear for her "economic . . . safety if she [was] exposed as a 'whistle-blower.'" *Id.* at 784. According to the relator, "unsealing any of the documents in this case would harm her reputation and career in the health care community and would discourage whistle blowers, like herself, from . . . exposing fraud against the Government." *Id.*

In analyzing the issue, the court looked to the statutory text of the FCA and the purpose of the seal provisions. It said, *id.* at 784:

> While the FCA clearly encourages private enforcement suits, there is nothing in the FCA evincing a congressional intent to impose a permanent seal over all *qui tam* suits where a relator seeks to voluntarily dismiss the action after the Government declines to intervene. Rather, the text of the FCA provides that the complaint will remain sealed for at least 60 days while the Government conducts its investigation to determine whether it will intervene. *See* 31 U.S.C. § 3730(b)(2).

The court continued, *id.* at 784-85:

> In this Court's opinion, the imposition of a 60-day time period for sealing *qui tam* complaints reflects Congress' desire to have the seal lifted after the Government conducts its initial investigation and decides whether to intervene. . . . Furthermore, the FCA only allows the Government to seek an extension of the 60-day time period for maintaining the seal, [31 U.S.C.] § 3730(b), which, in this Court's opinion, suggests that the seal was intended to allow the Government an opportunity to adequately investigate the defendant's alleged fraud, not to protect the identity of relators.

Notably, the *Bon Secours* Court pointed to the financial incentives afforded to *qui tam* relators to initiate actions under the FCA and to continue such actions even in the absence of intervention by the Government. In the latter circumstance, noted the court, relators receive "an

even greater financial incentive," *id.* at 785, but they cannot act "anonymously." *Id.* Under the FCA, if the Government elects to intervene and successfully prosecutes a *qui tam* action, the relator ordinarily receives "at least 15 percent but not more than 25 percent of the proceeds of the action or settlement." 31 U.S.C. § 3730(d)(1). If the Government declines to intervene, however, and the relator successfully prosecutes the case, the relator receives "not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement." *Id.* § 3730(d)(2). In either case, the relator is also entitled to an award of attorney's fees and costs. *See id.* § 3730(d)(1)-(2).

The *Bon Secours* Court also pointed to the "strong presumption in favor of public access to judicial records." *Id.* at 785. It recognized that the presumption in favor of public access to judicial records is particularly strong when the record pertains to matters of concern to the public, such as allegations of fraud against the Government. *Id.*[5]

To be sure, the court was mindful of the relator's "fear of employment-related retaliation," recognizing that it was not "completely unfounded." *Id.* Nevertheless, it regarded the relator's concerns as similar to those of the many other employees who bring suits against their employers or former employers for various reasons. *Id.* at 786. In the court's view, such fear was not sufficient to overcome the presumption of public access. *Id.* It also noted that the FCA provides a cause of action for employees who suffer retaliation for the filing of *qui tam* actions. *See* 31 U.S.C. § 3730(h); *Bon Secours*, 665 F. Supp. 2d at 786.

---

[5] For this proposition, the *Bon Secours* Court cited, *inter alia*, *Under Seal*, *supra*, 27 F.3d 564, 1994 U.S. App. LEXIS 16117, 1994 WL 283977, in which the Fourth Circuit rejected a *qui tam* defendant's request to maintain the seal after the *qui tam* action was settled.

Accordingly, the court concluded that the relator failed to demonstrate that the FCA authorizes the maintenance of a permanent seal with regard to *qui tam* complaints in which the Government decides not to intervene. *Bon Secours*, 665 F. Supp. 2d at 786. In rejecting the relator's request, the court stated: "[T]here is nothing in the FCA suggesting that the initial seal was imposed to protect the identity of the relator, or that *qui tam* complaints in which the Government decides not to intervene should be permanently sealed. . . ." *Id.* at 785. *See also United States ex rel. Yannacopolous v. General Dynamics*, 457 F.Supp. 2d 854, 858 (N.D. Ill. 2006) ("[T]he FCA clearly contemplates that the complaint be unsealed once the government has decided whether to intervene. . . ."); *United States ex rel. Erickson v. Univ. of Wash.*, 339 F. Supp. 2d 1124, 1126 (W.D. Wash. 2004) ("The FCA clearly contemplates the lifting of the seal on the relator's complaint."); *United States ex rel. Health Outcomes Technologies v. Hallmark Health System, Inc.*, 349 F. Supp. 2d 170, 173 (D. Mass. 2004) (stating that the FCA "clearly contemplates that the complaint be unsealed once the government has acted with respect to intervention. . . .").

*United States ex rel. Permison v. Superlative Technologies, Inc.*, 492 F.Supp. 2d 561 (E.D. Va. 2007), also provides guidance. There, the court rejected a relator's request to reseal a *qui tam* action initiated under the FCA, because the relator feared retaliation from his former employer. Although the court recognized that the fear of retaliation was "not entirely implausible," it was of the view that such fear was "hypothetical at best," and observed that the relator had "merely expresse[d] a general apprehension that his former employer might somehow interfere with his career prospects." *Id.* at 564. The court said: "[S]uch an amorphous retaliation concern will not suffice to warrant resealing the complaint. Indeed, to conclude otherwise would

ignore that Permison's amorphous concern is no different from the concern any employee may have when she sues her employer for whatever reason." *Id.* Therefore, Permison's "vague concern of future retaliation . . . falls far short of outweighing the public's strong interest in having access to court filings. . . . It is pellucidly clear, therefore, that resealing the *qui tam* complaint on this ground is unwarranted." *Id.*

Based on the foregoing, I am satisfied that there is no basis here to maintain the seal with respect to the Amended Complaint. At best, the relator has expressed hypothetical concerns about possible retaliation by her employer and damage to her career prospects. She concluded that these risks were worth taking if the Government would intervene. Having assumed the risk that the Government might not intervene, the relator cannot cherry pick the portions of the FCA that suit her.

Accordingly, the Court will deny Littlewood's request to maintain the seal as to the entirety of this case.

## The Government's Request to Partially Maintain the Seal

Although the Government opposes Littlewood's request to maintain the seal as to the Amended Complaint, it has asked the Court to maintain the seal with respect to its two motions for extensions of time to investigate the allegations. Section 3730(b)(3) of the FCA permits the Government to petition the Court for extensions of the evaluation period and the time for which the complaint remains under seal. But, those extensions are only granted upon the showing of good cause. The good cause requirement is "a substantive one, which the government can only satisfy by stating a convincing rationale for continuing the seal." *Baker & Taylor*, *supra*, 955

F.Supp. at 1190.  Here, the Government has failed to present any reason to maintain the seal with respect to its motions for extension.

The statute is quite specific as to the unsealing of a complaint once the Government decides whether to intervene.  However, "it is silent" with regard to the continued sealing of other documents, such as the Government's motions under § 3730(b)(3) to enlarge the evaluation and election period.  *Health Outcomes Techs.*, *supra,* 349 F. Supp. 2d at 173.  Many courts have recognized "that, by permitting *in camera* submissions, the statute necessarily invests the court with authority either to maintain the filings under seal or to make them available to the parties."  *Id.  See also Yannacopolous, supra,* 457 F. Supp. 2d at 858; *United States ex rel. Mikes v. Straus*, 846 F. Supp. 21, 23 (S.D.N.Y. 1994).

In resolving the issue, "[c]ourts have analogized motions to unseal or retain the seal on FCA documents to discovery matters considered under Rule 26(c) of the Federal Rules of Civil Procedure, which authorizes protective orders to guard trade secrets and similar information."  *Yannacopolous*, 457 F. Supp. 2d at 858. *See, e.g.*, *Erickson*, *supra*, 339 F. Supp. 2d at 1126.  In general, the court must consider and balance the harm that might result from disclosure against the countervailing need for disclosure.  *See, e.g., United States ex rel. Coughlin v. Int'l Bus. Mach. Corp.,* 992 F. Supp. 137, 141 (N.D.N.Y. 1998); *United States ex rel. O'Keefe v. McDonnell Douglas Corp.,* 902 F. Supp. 189, 192 (E.D. Mo. 1995).  When the "harm of unsealing outweighs the need for the documents, courts will deny motions to unseal FCA documents." *Yannacopolous,* 457 F. Supp. 2d at 858.

In *Mikes*, the court said that it is appropriate to decline to unseal filings where "disclosure of confidential investigative techniques, of information which could jeopardize an ongoing

investigation, or of matters which could injure *non-parties* is requested." *Mikes*, 846 F. Supp. at 23 (emphasis added); *accord Yannacopolous,* 457 F. Supp. 2d at 858; *see, e.g., O'Keefe*, 902 F. Supp. at 192 (declining to unseal documents that provided "some substantive details regarding the government's methods of investigation").

Conversely, unsealing is appropriate if the documents merely disclose "routine investigative procedures which anyone with rudimentary knowledge of investigative processes would assume would be utilized in the regular course of business … [and] contain[] no information about specific [investigatory] techniques. . . ." *Mikes*, 846 F. Supp. at 23; *see, e.g. Yannacopolous,* 457 F. Supp. 2d at 859 (declining to retain seal on governmental extension requests that did not contain names of witnesses or substantive details about the investigation); *United States ex rel. Johnson-Pochardt v. Rapid City Regional Hospital,* 2003 U.S. Dist. LEXIS 4758, at *7 (W.D.S.D. Jan. 21, 2003) (declining to retain seal on Government's motions for extensions because they "explain[ed] only general, routine matters of investigation"); *O'Keefe*, 902 F. Supp. at 192 (retaining seal on extension requests that provided "some substantive details regarding the government's method of investigation"); *United States by Dept. of Defense v. CACI Int'l, Inc.*, 885 F. Supp. 80, 83 (S.D.N.Y. 1995) (denying Government's request to maintain seal on documents that "describe[d] routine, general investigative procedures" and did "not implicate specific people or provide any substantive details").

In this case, the Government's request is conclusory and unpersuasive. In its initial request to retain the seal on its two motions for extension, the Government said: "[I]n discussing the content and extent of the United States' investigation, such papers are provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election

to intervene should be extended." Amended Notice at 2. Thereafter, in its Response, the Government submitted a five-page memorandum opposing the relator's request to retain the seal on the Amended Complaint and, in a footnote, it reiterated its request to retain the seal on the other pleadings. Yet, it provided no grounds or authority for the request. *See* Response at 2, n.1. In short, the Government has not articulated any cognizable rationale to maintain the seal. *See, e.g., United States ex rel. Alcohol Found., Inc. v. Kalmanovitz Charitable Found., Inc.*, 186 F. Supp. 2d 458, 465 (S.D.N.Y. 2002) (rejecting Government's conclusory request to retain seal because it did not demonstrate "'good cause' or any other rationale for keeping the official record under seal"); *United States ex rel. Fender v. Tenet Healthcare Corp.*, 105 F. Supp. 2d 1228, 1230 (N.D. Ala. 2000) (rejecting Government's request to retain seal on certain FCA documents, on the ground that the "request is unreasonable and contrary to the legislative intent of the FCA").

Moreover, based on my *in camera* review of the Government's two motions for extension, I am satisfied that they do not contain information that would jeopardize an ongoing investigation, nor do they include confidential investigative methodology. The first motion (ECF 9) merely outlines the kind of investigative procedures that "anyone with rudimentary knowledge of investigative processes would assume would be utilized in the regular course of business." *Mikes*, 846 F. Supp. at 23. The second motion (ECF 13) simply requests a brief delay occasioned by the need to obtain authorization to decline intervention from another division of the Department of Justice.

Of course, I have not had an opportunity to consider the defendants' position, because the defendants presumably are not yet aware of the existence of this case. But, even assuming that

they, too, would urge the Court to retain the seal, to protect their reputation or for other reasons, it is unlikely that I would be persuaded by such an argument. That position would not be particularly different from any other defendant that believes it was unfairly accused or sued. As the Fourth Circuit made clear in *Under Seal*, *supra*, 326 F.3d 479, that alone is not a basis for secrecy.

For the foregoing reasons, the Court will deny the Government's request to unseal only select documents in this case.

## Conclusion

By separate Order, the Court has directed that this case be unsealed in its entirety. However, the Court stayed the effect of its Order for 30 days to permit any interested party to note an appeal or to move for reconsideration.[6]

The stay also afforded the State of Montana thirty days to file an objection to the dismissal of this case. The Amended Complaint was not immediately dismissed, despite the fact that the relator filed a notice of voluntary dismissal (ECF 19). Although a notice of voluntary dismissal is ordinarily "self-executing," *Marex Titanic, Inc. v. Wrecked & Abandoned Vessel*, 2 F.3d 544, 546 (4th Cir. 1993), and operates to dismiss the complaint without any action by the court, that is not the case with respect to a *qui tam* complaint. Under the FCA, a *qui tam* action "may be dismissed only if *the court and the Attorney General* give written consent to the

---

[6] Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure requires an appeal to be noted "within 30 days after the judgment or order appealed from is entered." Notably, Rule 4(a)(1)(B) extends that time frame to 60 days in any case in which "the United States or its officer or agency is a party." However, Rule 4(a)(1)(B) does not apply to a case where, as here, "the United States has declined to intervene in a privately initiated FCA action," and therefore "is not a 'party' to the litigation." *United States ex rel. Eisenstein v. City of New York*, 129 S. Ct. 2230, 2236-37 (2009).

dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1) (emphasis added). The false claims acts of various states have similar provisions. Of particular relevance here, the Montana False Claims Act, Mont. Code Ann. §§ 17-8-401 *et seq.*, provides that a *qui tam* action "may be dismissed only if the court and the government attorney [representing Montana] give written consent to the dismissal and provide their reasons for consenting to the dismissal." *Id.* § 17-8-406(1).

By authority delegated pursuant to 28 U.S.C. § 510, 28 C.F.R. § 0.45(d), and 28 C.F.R. part 0, subpart Y, app'x § 4(b), the United States Attorney for the District of Maryland has notified the Court that the United States and the *qui tam* states consent to dismissal of this suit (ECF 21). However, as noted, in June 2010 Montana filed a separate Notice of Election to Decline Intervention (ECF 7), in which it expressly requested that the Court "solicit the written consent of the state of Montana before ruling [on] or granting its approval" of a proposal to dismiss or settle this case. In response to Montana's Notice, the Court (Blake, J.) issued an Order dated June 9, 2010 (ECF 8), stating, *inter alia*, that if the relator proposes to dismiss this case, the court "will solicit" Montana's written consent "before ruling or granting its approval." (ECF 8).

An Order implementing the foregoing rulings was issued on June 13, 2011.


Dated:  August 29, 2011                                      /s/
                                              Ellen Lipton Hollander
                                              United States District Judge